METROPOLITAN LIFE INSURANCE
COMPANY

v.

Rhoda J. CHASE, Appellant
and
Charles W. Chase, Elinor R. Chase Jones,
Georgia E. Chase Snell and Lawson
W. Chase.

No. 13542.

United States Court of Appeals
Third Circuit.

Argued June 5, 1961.
Decided Sept. 19, 1961.

Raymond Godbersen, Washington, D. C. (William F. Davey, Washington, D. C., on the brief), for appellant.

Eugene M. Haring, Newark, N. J. (Mc-Carter & English, Nicholas Conover English, Newark, N. J., on the brief), for plaintiff-appellee.

Louis Lebowitz, Elizabeth, N. J. (Bassin & Bassin, Elizabeth, N. J., on the brief), for defendants-appellees.

Before MARIS, KALODNER and FORMAN, Circuit Judges.

MARIS, Circuit Judge.

This interpleader suit was instituted by the plaintiff, the Metropolitan Life Insurance Company, in the District Court for the District of New Jersey to secure an adjudication of the claims of five individuals alleging themselves to be entitled to the proceeds of certain insurance on the life of Lawson W. Chase, deceased, issued under the Federal Employees' Group Life Insurance Act. 5 U.S.C.A. § 2091 et seq. Under the Act and the policy the insurance was payable

to the beneficiary designated by the insured, or, if no beneficiary had been designated, to the widow of the insured or, if none, to his children. No person had been designated by the insured as beneficiary. Named as defendants were Rhoda J. Chase, claiming as the widow of the insured, and Charles W. Chase, Elinor R. Chase Jones, Georgia E. Chase Snell and Lawson W. Chase, claiming as his children by a prior marriage. Defendant Rhoda J. Chase had instituted an action against the plaintiff in the District Court for the District of Columbia to recover the insurance proceeds. Upon deposit of the insurance proceeds into the registry of the district court in the present action the plaintiff secured from the court an injunction restraining the further prosecution of the suit in the District of Columbia. The plaintiff is a New York corporation. Defendants Rhoda J. Chase, Charles W. Chase, Elinor R. Chase Jones and Georgia E. Chase Snell are citizens and residents of New Jersey. Defendant Lawson W. Chase is a citizen and resident of California.

The question at issue in the interpleader proceeding was whether defendant Rhoda J. Chase was the widow of the insured. If so, she was entitled to the insurance proceeds but, if not, those proceeds go to the other defendants as children of the insured. Upon consideration of the facts which were stipulated by the parties, together with annexed exhibits and affidavits, the district court found that defendant Rhoda J. Chase was not the widow of the insured and awarded the insurance proceeds to the children. 189 F.Supp. 326. This appeal by defendant Rhoda J. Chase followed.

Preliminarily the appellant asserts that the district court did not have jurisdiction to entertain this interpleader suit while litigation involving the same subject matter was pending in the District Court for the District of Columbia. This contention is completely devoid of merit. The suit in the District of Columbia was an ordinary civil action brought to recover the insurance proceeds. It was the type of action the

further prosecution of which the district court in the present interpleader suit was expressly authorized by law to enjoin. 28 U.S.C. § 2361. The appellant asserts that the District Court for the District of Columbia could have acquired jurisdiction by counterclaim filed under Rule 22 of the Federal Rules of Civil Procedure, 28 U.S.C.A., of the interpleader controversy between the appellant and the other defendants to the present lawsuit. We do not agree. For the latter individuals were not amenable to personal service in the District of Columbia, and such personal service upon them in the District would have been a prerequisite to the acquisition by that court of jurisdiction of such a counterclaim under Rule 22. 3 Moore's Federal Practice, 2d ed., ¶ 22.04. A counterclaim for interpleader under Rule 22 is to be distinguished in this respect from an original action of interpleader brought under 28 U.S.C. § 1335 in which latter action process may be served upon defendants in any district as specifically authorized by 28 U.S.C. § 2361. Moreover, the venue of an original action of interpleader could not properly have been laid in the District of Columbia under 28 U.S.C. § 1397 since none of the claimants resides in the District. The district court did not err in enjoining the further prosecution of the District of Columbia action.

We turn then to the appellant's principal contention, which is that the court erred in finding that she was not the widow of the insured. The pertinent facts as stipulated and found by the district court are these:

The insured and the appellant, then Rhoda J. Green, went through the form of a ceremonial marriage in the District of Columbia on October 29, 1941, and thereafter lived together and held themselves out as man and wife until the death of the insured on July 9, 1957. During this entire period they were residents and domiciliaries of the State of New Jersey although twice a year or oftener they visited friends in the District of Columbia for a week or longer.

During these visits they cohabited in the District and held themselves out as husband and wife there. Prior to 1931 the insured had married Georgia E. Chase. This marriage was still subsisting on October 29, 1941 when he went through the form of a ceremonial marriage with the appellant and it was not terminated until February 19, 1948 when he obtained a decree of divorce from Georgia in the Court of Chancery of New Jersey. At the time of her marriage in 1941, the appellant knew that the insured had previously been married and that four children had been born of that marriage, but she had been given to understand and believed that the marriage had been terminated by divorce. She had no knowledge of the actual divorce in 1948, however, until after his death and no formal ceremonial marriage was entered into by her with him between February 19, 1948 and his death in 1957. It was further stipulated that Georgia E. Chase, the first wife of the insured, had married one Robert R. Dill on March 2, 1931 in the State of New York and in her affidavit for a license to marry had stated that she was divorced in 1928 and that her former husband was dead.

■■ It appears to be the law of the District of Columbia that when a ceremonial marriage has taken place which is invalid by reason of the impediment of a prior undissolved marriage, the subsequent removal of the impediment while the parties continue to live together as husband and wife will give rise to a valid common law marriage. Thomas v. Murphy, 1939, 71 App.D.C. 69, 107 F.2d 268; Parrella v. Parrella, 1941, 74 App.D.C. 161, 120 F.2d 728; McVicker v. McVicker, 1942, 76 U.S.App.D.C. 208, 130 F.2d 837. In New Jersey, however, where common law marriages have been abolished by statute since December 1, 1939, N.J.S.A. 37:1–10, the subsequent removal of such an impediment does not have that result and the marriage remains invalid unless and until a subsequent ceremonial marriage takes place. Dacunzo v. Edgye, 1955, 19 N.J. 443, 117 A.2d 508.

It is the contention of the appellant that when she and the insured first went to the District of Columbia after the impediment to their marriage had been removed by the 1948 divorce, and there held themselves out as man and wife, the law of the District operated in their case to give rise to a valid common law marriage. She asserts that this result followed even though their presence in the District of Columbia was merely for a temporary visit to friends and that their changed status was entitled to recognition upon their return to their domicile in New Jersey. This is the basis of her claim that she was lawfully married to the insured at the time of his death and is, therefore, entitled to the proceeds of the insurance. The appellees, on the other hand, urge that the local law of New Jersey, the domicile of the parties, is the law which determines the validity of their marriage and that since under that law the alleged common law marriage is not recognized the appellant is not the lawful widow of the insured and is accordingly not entitled to the insurance proceeds.

■■ A choice of law problem is thus presented which must be resolved in accordance with the conflict of laws rules of New Jersey, the State in which the district court sat. Klaxon Co. v. Stentor Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. It is a general rule of conflict of laws that a marriage which is valid under the law of the place where it is contracted is recognized as valid everywhere. Loughran v. Loughran, 1934, 292 U.S. 216, 223, 54 S.Ct. 684, 78 L.Ed. 1219; Restatement, Conflict of Laws, § 121. But where the parties, while retaining their domicile in one state, pay a temporary visit to another state and there enter into a marriage which would not be recognized by the law of the state of their domicile if entered into therein, the latter state does not always look to the law of the place of the marriage to determine its validity. On the contrary, when the state of their domicile has a strong public policy against the type of marriage which the

**504**

parties have gone to another state to contract, which policy is evidenced by a statute declaring such marriages to be void, the former state as the one most interested in the status and welfare of the parties will ordinarily look to its own law to determine the validity of the alleged marriage. Cunningham v. Cunningham, 1912, 206 N.Y. 341, 99 N.E. 845, 43 L.R.A.,N.S., 355; In re Vetas' Estate, 1946, 110 Utah 187, 170 P.2d 183; Wilkins v. Zelichowski, 1958, 26 N.J. 370, 140 A.2d 65; Restatement, Conflict of Laws, § 132, Annotation 117 A.L.R. 186.

In the Wilkins case it appeared that the plaintiff who was a New Jersey domiciliary under the age of eighteen years went temporarily to Indiana and was there married after which she and her husband returned to New Jersey and lived there. The marriage was valid under the laws of Indiana but the statute of New Jersey expressly prohibited the marriage of persons under the age of eighteen years. The court held that the New Jersey statute expressed a strong public policy of that State against recognizing marriages by persons under eighteen years of age and that accordingly the validity of the marriage was to be determined by the law of New Jersey the domicile of the parties rather than by the law of Indiana where it was celebrated. In so holding the court said: [26 N.J. 370, 375–376, 140 A.2d 65, 67–68]

"It is undisputed that if the marriage between the plaintiff and the defendant had taken place here, the public policy of New Jersey would be applicable and the plaintiff would be entitled to the annulment; and it seems clear to us that if New Jersey's public policy is to remain at all meaningful it must be considered equally applicable though their marriage took place in Indiana. While that State was interested in the formal ceremonial requirements of the marriage it had no interest whatever in the marital status of the parties. Indeed, New Jersey was the only State having any interest in that status, for both parties were domiciled in New Jersey before and after the marriage and their matrimonial domicile was established here. The purpose in having the ceremony take place in Indiana was to evade New Jersey's marriage policy and we see no just or compelling reason for permitting it to succeed."

 The question upon which the present case turns, therefore, is whether the New Jersey courts will take a similar view with respect to the determination of the validity of a common law marriage of New Jersey domiciliaries alleged to have been created under the law of another jurisdiction, in this case the District of Columbia. It appears that New Jersey has recognized, since the passage of its statute abolishing common law marriages, a common law marriage arising after the removal of an impediment to the validity of a ceremonial marriage when the parties were domiciled at the time the impediment was removed in a state having a rule that a common law marriage should result under those circumstances. Tegenborg v. Tegenborg, 1953, 26 N.J.Super. 467, 98 A.2d 105. See the explanation of the Tegenborg case in Danes v. Smith, 1954, 30 N.J. Super. 292, 298–300, 104 A.2d 455, 459. The fact that in the Tegenborg case Florida was the domicile of the parties at the time of their alleged common law marriage as well as the place where that marriage was claimed to have taken place, made it unnecessary for the court in that case to choose between the law of the domicile and that of the place of celebration of the marriage.

With respect to parties domiciled in New Jersey, however, the Supreme Court of that State in Dacunzo v. Edgye, 1955, 19 N.J. 443, 117 A.2d 508, held, as we have seen, that the New Jersey statute which abolished common law marriage prevents the recognition of such a marriage by parties who continue to live together and hold themselves out as husband and wife after an impediment to their prior ceremonial marriage has been

removed. It is true that in the Dacunzo case the parties were domiciled in New Jersey and their common law marriage was alleged to have taken place in that State. The defendant in that case could, therefore, not rely upon the law of any other state to support the validity of the alleged marriage.

In Winn v. Wiggins, 1957, 47 N.J.Super. 215, 135 A.2d 673, the parties were likewise domiciled in New Jersey but the plaintiff claimed that their common law marriage had taken place in Georgia or Florida, each of which States recognized such marriages. The trial court held the plaintiff's claim of a common law marriage was totally incapable of belief and found as a fact that a common law marriage had not been created in either State. On appeal this finding was affirmed. Under the circumstances the Appellate Division found it unnecessary to decide whether the law of Georgia or Florida would be recognized to uphold a common law marriage entered into by New Jersey domiciliaries. But the court took occasion to say that, while not finding it necessary to decide the point in view of the decision on the facts, [47 N.J.Super. 215, 224, 135 A.2d 673, 678] "we are of the opinion that the strong public policy evinced by the enactment of the 1939 statute, N.J.S.A. 37:1–10, is best effectuated by declaring that persons domiciled in New Jersey cannot leave this State, enter into a common-law marriage in a state where such marriages are allowed, and then return home and ask our courts to recognize that marriage". While technically obiter dictum we think that this statement is adequate evidence that the courts of New Jersey in the situation before us, in line with the decision in the Wilkins case, would apply the law of the domicile of the parties at the time their alleged common law marriage took place, i. e. New Jersey law, to determine the validity of that marriage. It was, therefore, right for the district court to do so.

The judgment of the district court will be affirmed.